**G. DeFRAYNE, Plaintiff,**

v.

**MILLER BREWING COMPANY,
Defendant.**

**Civ. No. 7–70598.**

United States District Court,
E. D. Michigan, S. D.

Jan. 18, 1978.

Paul M. Mandel, Pontiac, Mich., for plaintiff DeFrayne.

Samuel E. McCargo, Detroit, Mich., for American Arbitration Assn. and Robert W. Carr.

John A. Casey, Milwaukee, Wis., John A. Krsul, Jr., Detroit, Mich., for defendant.

## OPINION and ORDER GRANTING MOTION TO QUASH

GUY, District Judge.

This matter is before the court on the motions of plaintiff G. DeFrayne, the American Arbitration Association, and Arbitrator Robert W. Carr seeking a protective order and to quash defendant Miller Brewing Company's notice of deposition of Arbitrator Carr. The Court has reviewed and considered the briefs filed in support and opposition to this motion, and for the reasons hereinafter discussed, grants the Motion to Quash.

This dispute centers about the circumstances, if any, under which it is permissible for a party to depose an arbitrator in an action where it is sought to set aside the arbitrator's decision. Defendant's counterclaim at bar contends in part that the award should be vacated on grounds that the arbitrator "exceeded his powers and so imperfectly executed them" that no final award in fact was made. In pursuit of this claim, defendant seeks to interrogate Arbitrator Carr as to two issues: (1) whether the arbitrator considered those factors which the contract directs relative to the determination of whether "cause" existed for defendant to terminate plaintiff's distributorship and (2) whether the arbitrator adhered to the contractually-fixed damage formula in computing his award.

The court finds that the legal principles which must govern the resolution of this dispute are most aptly stated in *Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter*, 291 N.C. 208, 230 S.E.2d 380 (1976). That decision exhaustively reviews the conflicting authorities in this area, analyzes the policies that have been asserted on both sides of this issue, and ultimately concludes:

. . . that where an objective basis exists for a reasonable belief that misconduct has occurred, the parties to the arbitration may depose the arbitrators rela-

tive to that misconduct. 230 S.E.2d at 388.

Absent such an objective basis, the authorities are legion in declining to afford the losing party a fishing expedition in an attempt to set aside the award because:

> To do this would neutralize and negate the strong judicial admonitions that a party who has accepted this form of adjudication must be content with the results. (Citations omitted.) *Gramling v. Food Machinery & Chemical Corp.*, 151 F.Supp. 853 (W.D.S.C.1957).

■ Applying the test of *Gunter* to the circumstances existing at bar, it is apparent that defendant does not demonstrate an objective basis for a reasonable belief that misconduct has occurred. In *Gunter*, the court noted that:

> Here, the objective basis is provided by the obvious inconsistency of the award with the evidence presented at the hearing. Plaintiff's evidence and contentions fixed the percentage owed by it for taxes, utilities and insurance at 47 to 60 percent, while defendant's contentions and proof set it at 66⅔ percent. Yet, the arbitrators established plaintiff's portion at 61 percent, a figure unsupported by the evidence of either party. 230 S.E.2d at 388.

At bar, defendant urges that the circumstances are analogous, but its contentions are no more than conclusory speculation falling well short of *Gunter's* objective standard. With reference to defendant's intention of inquiring of the arbitrator whether he properly determined that Miller did not have "cause" for terminating plaintiff, the "objective" predicate asserted is that "the addendum requires the arbitrator to consider a number of circumstances, and it is submitted that Miller is entitled to inquire of the arbitrator as to whether or not that consideration was made." (Defendant's Brief at 3.) This provides the court with no basis from which it might reasonably conclude that misconduct occurred; indeed, defendant's bare claim of "entitlement" can support no more than a fishing expedition.

The other issue on which defendant has professed an intention to interrogate the arbitrator is whether the contractual damage formula was applied. Here again, defendant's argument goes little distance further than to claim that it "is impossible to determine whether or not the arbitrator exceeded the powers delegated to him by the distributorship agreement." (Defendant's Brief at 6.) *Gunter*, however, does not stand for the proposition that inquiry of the arbitrator lies on such an equivocal state of facts, requiring rather that there be some demonstrably objective basis for concluding that the arbitrator *did* exceed his powers or otherwise commit misconduct. In this regard, defendant further claims that "many hours of laboring over the evidence introduced at the arbitration hearing and attempting to utilize that evidence in conjunction with the damage formula provided by the contract fail to produce any theory whereby an arbitration award of $17,012.00 can be sustained." (Defendant's Brief at 8–9.) This assertion does not provide the court with an objective basis to conclude that the formula was not followed; it, rather, leaves any objective basis conspicuously absent and simply supplies the court with the conclusion that defendant contends should follow therefrom.

Moreover, *Gunter* voices certain concerns and qualifications to its opinion which the court finds to be of significance at bar. *Gunter* involved a panel of three arbitrators which had conducted an *ex parte* investigation of certain premises as to which the parties disputed proportional liability for taxes, insurance, and utilities. After finding that the arbitrators' award was not consistent with the contention of either party, and therefore allowing the arbitrators' depositions, the court observed:

> We do not, by this ruling, authorize inquisition into the mental processes of the arbitrators. We share the view expressed by other courts that such inquiry into the reasoning behind an award would relegate arbitration to a superfluous role in the judicial process. Nor do we open the door to "tampering" with arbitration awards. Unlike error which

arises in the mind of the arbitrator and must rise or fall solely on his statements, we are here concerned with misconduct which can likely be corroborated or denied, either by other members of the arbitration panel or by extrinsic evidence. Furthermore, this decision will not lead to "fishing expeditions" by the loser, thus destroying the abbreviated format of the arbitration panels. An arbitrator's deposition of misconduct may be allowed in evidence *only when some objective basis exists for a reasonable belief that misconduct has occurred.* (Citations omitted.) (Emphasis in original.) 230 S.E.2d at 387.

The court finds at bar that this case is distinguishable from *Gunter.* It appears that the inquiry proposed rests on allegations which are not grounded in an objective basis for believing that misconduct has occurred. Rather than inquiry relative to specific misconduct, defendant has established only a predicate for inquiry into the reasoning behind an award, which the court declines to authorize. Accordingly,

IT IS ORDERED that the Motion to Quash Notice of Deposition of Arbitrator Carr be, and hereby is, GRANTED.