PASCHEN CONTRACTORS, INC. *et al.*, Movant-Appellant, *v.* JOHN J. CALNAN COMPANY, Respondent-Appellee.

(No. 59054;

First District (1st Division)—July 9, 1973.

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, of Chicago, for appellant.

Benjamin I. Coven, of Chicago, (Morris Solomon and Norman Hanfling, of counsel,) for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The movant filed a petition, under par. 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1971, ch. 10, sec. 102(b)), in the circuit court, seeking a stay of an arbitration proceeding pending between movant and respondent before the American Arbitration Association, on the ground that there is no agreement between movant and respondent to arbitrate any of the items sought by respondents to be arbitrated. The circuit court denied the petition and denied also the movant's oral motion for a stay pending a ruling by this court on appeal. The movant has now moved in this court for a stay, the matter has been argued orally here and both movant and respondent agree that this court should decide the case on its merits as soon as possible, which we now proceed to do.

The movant is a joint venture consisting of Paschen Contractors, Inc., Gust K. Newberg Construction Company and S. N. Nielsen Company, organized in Illinois for the purpose of constructing certain facilities at Kennedy-King College in Chicago pursuant to a contract with the Illinois Building Authority. The respondent is an Illinois corporation having its principal place of business in Chicago. Movant and respondent on October 9, 1970, entered into a written subcontract whereby respondent undertook to install the plumbing in said facilities.

On November 13, 1972, after the building had been constructed, respondent filed a demand for arbitration of certain disputes with movant and the arbitration so demanded is pending in Chicago before the American Arbitration Association. On May 2, 1973, the respondent filed an amended demand for arbitration of six items (we are advised that a seventh item, involving retentions, has since been paid and is therefore moot), which we shall set out in more detail later in this opinion.

On May 14, 1973, movant filed in the circuit court a motion for a stay of said arbitration under section 2(b) of the Uniform Arbitration Act (Ill. Rev. Stat. 1971, ch. 10, sec. 102(b)), which provides that:

"(b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration."

In addition to setting out the foregoing, the movant set out the contract involved and the items in dispute and took the position that no agreement exists to arbitrate any of said items.

The trial court denied the petition for a stay and also the movant's motion for a stay pending this appeal. On appeal, the movant also moves here for a stay pending our decision but we are advised that arbitration has been delayed before the Association pending our ruling.

As to items 1, 2, 3, 4 and 5, movant contends that, although paragraph 39 provides generally for the arbitration of "all disputes arising hereunder," it excludes items "determined by the architect pursuant to paragraph 21 hereof" which, in turn, incorporates paragraph 35 of the General Conditions, and takes the position that said five items were such as were to be determined by the architect and are thus excluded from the arbitration provision.

As to item 6 (claiming a "fair percentage of the funds received by the respondent herein for special training of minority group employees," etc.), movant takes the position that this claim is in no way "a dispute arising hereunder" but is a claim outside of the scope of the subcontract and is thus not arbitrable.

■■ There are some four cases to date in Illinois dealing with arbitration under the Uniform Arbitration Act. In *School Dist. No. 46 v. Del Bianco* (1966), 68 Ill.App.2d 145, 215 N.E.2d 25, written by Mr. Justice Davis, formerly and now again on our Supreme Court, the Appellate Court for the Second District took the view, at page 155, that:

"Where there is an agreement to arbitrate and its scope is reasonably in doubt, the issue of arbitrability should be initially de-

termined by the arbitrators, subject to the protective reservations of section 12 of the Act—under which the court may vacate an award under the varying conditions therein specified."

■■ In *Butler Products Co. v. Unistrut Corp.* (7th Cir. 1966), 367 F.2d 733, although it affirmed a holding refusing arbitration, the court, at page 736, said:

"We look with favor upon arbitration as a means of removing contentions from the area of litigation. Hence if the scope of this arbitration agreement were 'fairly debatable' or 'reasonably in doubt', then its construction should go to the arbitrator. School District No. 46 v. Del Bianco, 68 Ill.App.2d 145, 154, 155, 215 N.E.25, 29, 30 (2d Dist., 1966.)"

■■ In *Flood v. Country Mutual Insurance Co.* (1968), 41 Ill.2d 91, 242 N.E.2d 149, in holding that the arbitration clause in an "uninsured motorist's" policy did not require arbitration of the threshold question of whether the other driver was in fact uninsured, the Supreme Court, through Mr. Justice Kluczynski, at page 94, said:

"Despite the salutary purpose of our Arbitration Act, parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication."

And, finally in *Blades, Inc. v. Jarman Memorial Fund, Inc.* (1969), 109 Ill.App.2d 224, 248 N.E.2d 289, in affirming a denial of arbitration, the Appellate Court for the Fourth District, at pages 228-229, said:

"It seems to have been the intention of the committee who wrote the Uniform Arbitration Act that the preliminary hearings to compel or to stay arbitration hearings were restricted to a single question and that was 'Is there an agreement to arbitrate?' Pirsig, Some Comments on Arbitration Legislation and the Uniform Act, 10 Vanderbilt L Rev 686, 694 (1957). Who answers this question—the court or the arbitrators?

Marhoefer cites School Dist. No. 46 v. Del Bianco, 68 Ill.App.2d 145, 215 NE2d 25, and Layne-Minnesota Co. v. Regents of University of Minnesota, 266 Minn 284, 123 NW2d 371, for the proposition that where the scope of the arbitration agreement is reasonably debatable, the issue of arbitrability should be initially determined by the arbitrators. * * * Neither free-wheeling policy appeals to us nor do we think either policy is within the contemplation of the Uniform Arbitration Act. The issue of whether or not there is any jurisdiction to arbitrate or the limits of that jurisdiction should be determined at the earliest possible moment and should be controlled by judicial guidelines. To be

realistically effective, § 2(a) and § (b) of the Uniform Arbitration Act, Ill. Rev. Stat. 1967, ch. 10, par. 102, § 2, must apply not only to the existence of an agreement but also to the scope of that agreement."

■■ While these courts differ somewhat, we are of the opinion that, where the matter is raised, as here, by a motion for a stay, the court should, after a careful reading of the contract, itself decide the controlling question of whether or not the parties have agreed to arbitrate the items on which the respondent seeks arbitration.

Paragraph 39 of said subcontract provides in relevant part that:

"All disputes arising hereunder and not determined by the Architect pursuant to paragraph 21 hereof shall be submitted to arbitration."

Said paragraph 21 of the subcontract, in pertinent part, provides that:

"Except as otherwise provided in the contract documents or in this subcontract, any dispute arising hereunder and involving a question subject to determination by the Architect pursuant to paragraph 35 of the general conditions shall, upon written request by the Subcontractor, be submitted by the Contractor for decision by the Architect. Subcontractor shall be bound by all decisions of the Architect made pursuant to the authority granted it by said paragraph 35 of the general conditions. * * * Pending final decision on any dispute hereunder, the Subcontractor shall proceed diligently with the work without interruption and strictly in accordance with Contractor's directions."

Paragraph 35 of the General Conditions, above referred to, provides as follows:

## "35. ARCHITECT/ENGINEERS AUTHORITY

The Architect/Engineer shall give all orders and directions contemplated under this Contract and Specifications relative to the execution of the Work. The Architect/Engineer shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this Contract and shall decide all questions which may arise in relation to said work and the construction thereof. The Architect/Engineer's estimates and decisions shall be final and conclusive, except as herein otherwise expressly provided. In case any question shall arise between the parties hereto relative to said Contract or Specifications, the determination or decision of the Architect/Engineer shall be a condition precedent to the right of the Con-

tractor to receive any money or payment for work under this Contract affected in any manner or to any extent by such question.

The Architect/Engineer shall decide the meaning and intent of any portion of the Specifications and of any Drawings where the same may be found obscure or be in dispute. Any differences or conflicts in regard to their work which may arise between the Contractor under this Contract and other Contractors performing work for the Owner shall be adjusted and determined by the Architect/Engineer."

Items 1 through 5 of the demand for arbitration, here involved, seek some $195,000 for engineering and draftman's fees necessary to correct the omissions of architectural drawings required to complete the plumbing contract, plus extra labor and materials, including tanks, over 3,000 feet of pipe, downspouts, waste and vent stacks, branches, etc., not depicted on the original drawings and well in excess of normal job conditions, all of which were required by clarifying drawings forwarded by the architect to the plumbing subcontractor after the bid was made and accepted and all were furnished and accepted on the job.

■■ While paragraph 35 of the General Conditions, above set out, does give the architect the power to pass on the amount, quality, acceptability and fitness of work and materials, to decide the meaning and intent of the specifications and drawings which are obscure or in dispute and to adjust and determine disputes between the contractor and other contractors, it does not in our considered opinion, give the architect the power to pass upon his own errors and omissions, and to require a subcontractor to perform extra work and to furnish materials not encompassed in the architect's own deficient plans and specifications, all without compensation. To permit this would be an outrageous result not contemplated by the parties, and one not compelled by the language of the contract.

We therefore hold that items 1 through 5 are not matters to be decided by the architect and are thus not excluded from the general arbitration clause.

■■ Item 6 of the movant's demand for arbitration, which the movant contends is not arbitrable because it is nowhere mentioned in the contract, is as follows:

"6. *AWARD AND PAYMENT* from an accounting to the John J. Calnan Co. for a fair percentage of the funds received by the respondent herein for special training of minority group employees and said training program was imposed upon the petitioner, John J. Calnan Co., by respondent, and the above described funds were never disclosed by the respondents to

the petitioner as being available for this special purpose.

TOTAL AMOUNT DUE— Unknown"

We agree with movant that this claim is not within the scope of the contract and thus is not arbitrable under the contract.

We therefore reverse the order of the circuit court denying a stay of arbitration insofar only as it applies to item 6, remand the case to the circuit court for the entry of an order permanently staying arbitration as to that item but denying a stay as to items 1, 2, 3, 4 and 5, and in all other respects affirm the order below. We assume that, in view of the suspension of arbitration before the Association, no ruling is required on the movant's motion here for a stay pending our decision.

Affirmed in part, reversed in part and remanded with directions.

BURKE, P. J., and EGAN, J., concur.