RUFFIN WOODY AND ASSOCIATES, INC. v. PERSON COUNTY AND
AMERICAN ARBITRATION ASSOCIATION

No. 889SC279

(Filed 6 December 1988)

1. **Arbitration and Award § 1— plaintiff's limited participation in arbitration—no waiver of right to object to arbitrability**

    Plaintiff's limited participation in arbitration did not operate as a waiver of its right to object to the arbitrability of defendant's claims where plaintiff raised its objection before the hearing on the merits and before the selection of arbitrators was complete, N.C.G.S. § 1-567.3; nor was plaintiff bound by the admission in its initial answer that the claims were subject to arbitration, since plaintiff, by filing its amended answer to which defendant did not object, raised the issue of arbitrability.

2. **Arbitration and Award § 1— finality of architect's decision—clause controlling over arbitration clause**

    Though there was conflicting language in the various documents which comprised the parties' construction contract, General Condition 35 of the U. S. Dept. of Commerce Economic Development Administration providing that the architect's decisions were final and conclusive took precedence over the AID documents which provided that most of the decisions of the architect were subject to arbitration.

3. **Arbitration and Award § 5— architect's performance—disputes arbitrable**

    Though the parties' contract made the architect's decisions final as between the owner and the contractor, the contract was silent as to disputes concerning the architect's performance, and such disputes were therefore arbitrable. Defendant raised such arbitrable issues where it alleged that the architect failed to prepare change orders, properly to inspect the work, and to make periodic visits to the site.

4. **Arbitration and Award § 9— application to vacate award—ninety day period allowed—motion to confirm award before ninety days expire**

    N.C.G.S. § 1-567.13(b) provides that, in most cases, an application to vacate an arbitration award must be made within ninety days after a copy of the award has been delivered to the applicant, but the statute does not require the trial court to defer its ruling on a motion to confirm the award for the entire ninety day period even though a motion to vacate has already been filed.

5. **Arbitration and Award § 9— arbitrator's business dealings with defendant—failure to disclose—dealings remote**

    Though a neutral arbitrator was under an affirmative duty to disclose any prior dealings with defendant, the trial court did not err in denying plaintiff's motion to depose the arbitrators or alternatively to vacate the award, since the two structural design projects which the arbitrator's firm completed for defendant were done in 1965 and 1968 and were remote enough in time to dissipate any partiality on the arbitrator's part; the consulting work performed

for defendant by the arbitrator in 1979 and 1980 did not appear to be substantial, the fee for such services being $797.29; and the exhibits to plaintiff's motion permitted the inference that plaintiff had at least constructive knowledge of the arbitrator's prior contacts with defendant.

APPEAL by plaintiff from *Hobgood (Robert H.), Judge,* and *Clark (Giles R.), Judge.* Order entered 10 June 1986 and Order and Judgment entered 11 November 1987 in Superior Court, PERSON County. Heard in the Court of Appeals 27 September 1988.

This appeal arises out of an arbitration proceeding. Plaintiff contracted with defendant Person County (hereinafter "defendant") to build an addition to the Person County Courthouse. The parties executed a written agreement on 12 December 1977. The agreement consisted of a standard form contract issued by the American Institute of Architects (AIA Document A107), another AIA document entitled "General Conditions of the Contract for Construction," and additional "General Conditions" issued by the U.S. Department of Commerce Economic Development Administration (EDA). Both AIA documents included provisions for the arbitration of substantially all claims arising out of the contract. The EDA General Conditions, however, contained no provisions regarding arbitration and provided that the architect's decisions regarding the acceptability of the work performed by the contractor were final and conclusive. A separate agreement between defendant and the architect provided for arbitration of all claims arising out of the agreement.

Plaintiff completed the project and the architect issued a certificate of substantial completion on 11 May 1979. On 15 July 1979, the architect issued a final acceptance report stating that the contract was acceptable "except for minor cleanup and corrective work."

Defendant filed a demand for arbitration with the American Arbitration Association (AAA) on 6 May 1985 and then filed an amended statement of claim dated 7 October 1985. Defendant alleged that both plaintiff and the architect had breached their contracts and demanded a consolidated arbitration against both parties. Defendant further alleged that there were several defects in the completed building and that these defects were the result of faulty workmanship and defective design.

Plaintiff filed an answer, counterclaim, and crossclaim dated 25 October 1985. In its answer, plaintiff admitted that defendant's claims were proper subjects for arbitration by the AAA. Plaintiff also submitted a $500 administrative fee to the AAA. On 31 October 1985, the AAA commenced the process of selecting arbitrators. At the request of defendant, arbitration proceedings were postponed on 27 November 1985 until repairs on the building could be completed. On 16 May 1986, plaintiff filed an amended answer which included a denial of the AAA's jurisdiction on the grounds that the contract conditions provided that the architect's decisions concerning the acceptability of the work were final and conclusive.

In a letter dated 29 May 1986, the AAA informed the parties that "an issue of arbitrability exists which could be decided by an arbitrator" and the matter would proceed to arbitration in the absence of a restraining order. On 6 June 1986, plaintiff obtained a temporary restraining order in Person County Superior Court. The order enjoined any further arbitration proceedings pending a hearing to determine whether the order should be converted to a preliminary injunction. On 10 June 1986, the court entered an order denying plaintiff's motion for a preliminary injunction, dissolving the temporary restraining order, and staying the civil action pending arbitration and award.

On 9 October 1987, the arbitrators entered an award against plaintiff in the amount of $63,000 and against the architect in the amount of $32,000. On 19 October 1987, defendant filed a motion in Superior Court to lift the stay of the civil action and confirm the award. Plaintiff, on 28 October 1987, filed a motion to depose the arbitrators and, alternatively, to vacate the award. On 11 November 1987, the trial court entered an order denying plaintiff's motions, confirming the award, and entering judgment for defendant. Plaintiff appeals.

*Jackson, Hicks & Fitzgerald, by Alan S. Hicks, for plaintiff-appellant.*

*George K. Freeman, Jr.; and Tolin & Long, by James W. Tolin, Jr., for defendant-appellee Person County.*

PARKER, Judge.

Plaintiff first assigns error to the trial court's denial of its motion to enjoin the arbitration on the grounds that there was no valid agreement to arbitrate. Plaintiff next assigns error to the trial court's granting of defendant's motion to confirm the award prior to the expiration of the ninety-day period prescribed in G.S. 1-567.13(b). Plaintiff's third and fourth assignments of error are that the trial court erred in denying plaintiff's motion to depose the arbitrators or alternatively to vacate the award on the grounds that the neutral arbitrator failed to disclose prior business dealings with defendant.

[1] Before considering plaintiff's argument in support of its first assignment of error, we must address defendant's contention that plaintiff waived its right to challenge the arbitrability of defendant's claims by participating in the arbitration. One who participates in an arbitration hearing without objection may not raise an objection after the award is entered. *McNeal v. Black*, 61 N.C. App. 305, 300 S.E. 2d 575 (1983). In this case, however, plaintiff's objection was filed before the hearing was commenced. Moreover, plaintiff followed the correct procedure by applying for a court order to stay the arbitration proceeding. G.S. 1-567.3. Once the trial court refused to enjoin the arbitration, plaintiff had no choice but to participate in the proceeding. The specific instances in which an appeal may be taken from an arbitration order are set out in G.S. 1-567.18, and the statute does not permit an appeal to be taken from the denial of an application to stay arbitration.

Defendant contends that plaintiff's limited participation in the arbitration before it filed its amended answer was sufficient to operate as a waiver of its right to object. General Statute 1-567.3(b) provides, however, that, upon a showing that there is no agreement to arbitrate, "the court may stay an arbitration proceeding commenced or threatened." This provision clearly contemplates that objections to arbitration proceedings may be raised after the institution of the proceedings. Plaintiff in this case raised its objection before the hearing on the merits and before the selection of arbitrators was complete. Therefore, the objection was timely.

Defendant also contends that plaintiff should be bound by the admission in its initial answer that the claims were subject to ar-

bitration. This argument is without merit. By filing its amended answer, plaintiff raised the issue of arbitrability. Nothing in the record indicates that defendant objected to the filing of the amended answer, and both the AAA and the trial·court considered the merits of the issue. Accordingly, we hold that plaintiff has not waived its right to object to arbitration on the grounds that there was no agreement to arbitrate.

[2] Plaintiff contends that defendant's claims are not arbitrable because the terms of the contract provide that the architect's decision as to the acceptability of the work is binding and conclusive. The determination of whether a particular claim is arbitrable is controlled by the language of the parties' agreement. *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 23-24, 331 S.E. 2d 726, 731 (1985), *disc. rev. denied*, 315 N.C. 590, 341 S.E. 2d 29 (1986). Plaintiff relies on the following provision of the EDA General Conditions:

35. ARCHITECT/ENGINEER AUTHORITY

The Architect/Engineer shall give all orders and directions contemplated under this contract and specifications relative to the execution of the work. The Architect/Engineer shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof. The Architect/Engineer's estimates and decisions shall be final and conclusive, except as herein otherwise expressly provided. In case any question shall arise between the parties hereto relative to said contract or specifications, the determination or decision of the Architect/Engineer shall be a condition precedent to the right of the Contractor to receive any money or payment for work under this contract affected in any manner or to any extent by such question.

General Condition 35 clearly designates the architect as the final authority on questions concerning the work performed by the contractor. Our courts have held that such a provision is binding on the parties to a construction contract. *Heating Co. v. Board of Education*, 268 N.C. 85, 150 S.E. 2d 65 (1966); *Elec-Trol, Inc. v. Contractors, Inc.*, 54 N.C. App. 626, 284 S.E. 2d 119 (1981), *disc. rev. denied*, 305 N.C. 298, 290 S.E. 2d 701 (1982).

Article 14 of AIA Document A107, however, provides:

> All claims or disputes arising out of this Contract or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. . . .

Article 8 of Document A107 includes the following provision:

> 8.5 The Architect will be, in the first instance, the interpreter of the requirements of the Contract Documents. He will make decisions on all claims and disputes between the Owner and the Contractor. All his decisions are subject to arbitration.

The additional AIA General Conditions further provide:

> 2.2.12 Any claim, dispute or other matter in question between the Contractor and the Owner referred to the Architect, except those relating to artistic effect as provided in Subparagraph 2.2.11 and except those which have been waived by the making or acceptance of final payment as provided in Subparagraphs 9.9.4 and 9.9.5, shall be subject to arbitration upon the written demand of either party. . . .

Thus, there is a clear conflict between EDA General Condition 35 which provides that the architect's decisions are final and conclusive, and the AIA documents, which provide that most decisions of the architect are subject to arbitration.

Plaintiff contends that General Condition 35 is controlling because EDA General Condition 41 states: "Any provision in any of the contract documents which may be in conflict or inconsistent with any of the paragraphs in these General Conditions shall be void to the extent of such conflict or inconsistency." Plaintiff argues that this condition overrides the AIA provisions for arbitration of the architect's decisions. Defendant, however, contends that the AIA provisions should be given effect because General Condition 35 states that the architect's decisions are final and conclusive "except as herein otherwise expressly provided." Defendant argues that the AIA provisions come within this exception. Plaintiff's counter-argument is that the word "herein" in the exception indicates that the exception was intended only to

include other provisions in the EDA general conditions and not other documents incorporated into the contract.

We agree with plaintiff's interpretation of the contract. The EDA general conditions are set out in a separate, self-contained document. Although separate documents forming a single contract are normally construed as a single instrument, such a construction should not operate to avoid essential contract terms. *See Trust Co. v. Processing Co.*, 242 N.C. 370, 377, 88 S.E. 2d 233, 238 (1955) (quoting *Howell v. Howell*, 29 N.C. 491, 494 (1847)). The word "herein" in General Condition 35 clearly refers to the other EDA general conditions as opposed to any additional contract documents. If the provisions in the AIA documents are given effect, then only those decisions of the architect regarding "artistic effect" would remain conclusive and General Condition 35 would be rendered meaningless. Because General Condition 41 expressly provides that the EDA conditions should take precedence over any other contract documents, the AIA arbitration provisions are not effective to the extent that they conflict with General Condition 35.

In support of this construction, we note that the Appellate Court of Illinois reached the same result when construing a contract which contained provisions identical to those at issue in this case. *Roosevelt Univ. v. Mayfair Constr. Co.*, 28 Ill. App. 3d 1045, 1057-61, 331 N.E. 2d 835, 844-48 (1975). The *Roosevelt* court concluded that matters within the scope of General Condition 35 were not arbitrable. *Id.*

[3] Although we agree with the contract interpretation urged by plaintiff and adopted in *Roosevelt, supra*, other considerations require us to hold that, under the facts of this case, defendant's claims against plaintiff are arbitrable. General Condition 35 makes the architect's decisions final as between the owner and the contractor, but the EDA general conditions are silent as to disputes concerning the architect's performance.

Even where the contract provides that the decisions of the architect are conclusive, his decisions may be attacked if there is evidence of fraud or failure to exercise honest judgment. Our Supreme Court has stated the rule as follows:

[W]here the parties stipulate, expressly or in necessary effect, that the determination of the architect or engineer shall

be final and conclusive, both parties are bound by his determination of those matters which he is authorized to determine, except in case of fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment.

*Heating Co. v. Board of Education*, 268 N.C. at 90, 150 S.E. 2d at 68 (quoting 13 Am. Jur. 2d *Building and Construction Contracts* § 34 (1964) ). In the present case, defendant did not allege fraud on the part of the architect, but defendant's amended statement of claim did allege that the architect's designs were faulty in several respects and the architect breached his contract with the owner in that:

A) He failed to prepare change orders.

B) He failed to properly inspect, or test, the work and reject work which did not conform to the contract documents.

C) He failed to make periodic visits to the site so as to monitor and inspect the construction and thereby guard the Owner against defects and deficiencies in the work.

D) He accepted work which was not performed in accordance with the contract documents and approved payment therefor.

Both the architect's contract with defendant and the agreement between defendant and plaintiff require the architect to make periodic inspections in order to guard the owner against defects and deficiencies in the work of the contractor.

In our view, defendant's allegations at least raised an issue as to whether the architect failed to exercise honest judgment in reaching his decisions. Although there is nothing in the record before us to enable us to gauge the truth of the allegations, we do know that the arbitrators entered an award against the architect, thereby indicating some fault on his part. In *Paschen Contractors, Inc. v. John J. Calnan Co.*, 13 Ill. App. 3d 485, 300 N.E. 2d 795 (1973), cited with approval in *Roosevelt, supra*, the court held that certain claims pertaining to the architect's decisions were not excluded from a general arbitration clause even though they were within the scope of the language of General Condition 35:

[General Condition 35] does not in our considered opinion, give the architect the power to pass upon his own errors and omissions, and to require a subcontractor to perform extra work and to furnish materials not encompassed in the architect's own deficient plans and specifications, all without compensation. To permit this would be an outrageous result not contemplated by the parties, and one not compelled by the language of the contract.

13 Ill. App. 3d at 490, 300 N.E. 2d at 799.

This reasoning is pertinent to the present case. Defendant's amended statement of claim included the following paragraph:

Because the claims made herein are so interrelated that complete and fair relief may not be obtained unless the arbitration involves all three parties (The Owner, the architect and the Contractor) the Owner hereby demands a consolidated arbitration against the Architect and the Contractor. A principal issue to be resolved in the arbitration is the question of responsibility for certain defects in the building and whether such defects are design or construction defects.

This paragraph raises the issue of whether the architect or the contractor was responsible for defects in the work. Plaintiff also raised this issue by asserting a crossclaim against the architect.

Although there is no provision in the contract documents which specifically addresses the resolution of such a dispute, the general arbitration clause in the contract calls for arbitration of "[a]ll claims or disputes arising out of this Contract or the breach thereof . . . ." This and other contract provisions calling for arbitration cannot be ignored in considering whether to except a claim from the operation of General Condition 35. In making this determination, public policy requires us to resolve any doubts in favor of arbitration. *See Servomation Corp. v. Hickory Construction Co.*, 316 N.C. 543, 546, 342 S.E. 2d 853, 855 (1986). The contract construed as a whole manifests the parties' intention to submit all disputes to arbitration unless there was an express provision to the contrary. *See Robbins v. Trading Post*, 253 N.C. 474, 477, 117 S.E. 2d 438, 440-41 (1960). In this case, the contract does not contain a specific provision governing the settlement of the dispute at issue involving the performance of both the ar-

chitect and the contractor. We find, therefore, that such a dispute comes within the scope of the general arbitration clause, and that the trial court did not err in refusing to stay the arbitration proceedings in this case.

[4] Plaintiff next contends that the trial court erred in granting defendant's motion to confirm the arbitration award prior to the expiration of the ninety-day period prescribed in G.S. 1-567.13(b). This contention is without merit.

The award in this case was entered 9 October 1987, defendant filed a motion to confirm the award 19 October 1987, plaintiff filed a motion to depose arbitrators or vacate the award 28 October 1987, and the trial court denied plaintiff's motion and confirmed the award on 11 November 1987. General Statute 1-567.13(b) provides that, in most cases, an application to vacate an arbitration award must be made within ninety days after a copy of the award has been delivered to the applicant. Plaintiff would have us rule that the statute requires the trial court to defer its ruling for the entire ninety-day period even though a motion to vacate has already been filed. There is no support in statutory or case law for plaintiff's position. Moreover, the record shows that plaintiff had the opportunity to be heard on its motion to vacate the award. The assignment of error is overruled.

[5] Plaintiff's last two assignments of error both concern the failure of the neutral arbitrator, W. H. Gardner, Jr., to disclose prior business dealings with defendant. Plaintiff contends that the failure to disclose these dealings was sufficient grounds either to depose the arbitrators or vacate the award.

The panel of three arbitrators in this case consisted of one arbitrator appointed by each of the parties and a third, neutral arbitrator who was selected by the first two. The parties were given the opportunity to object to and request disclosure from the arbitrators. Plaintiff requested the arbitrators to disclose any past associations they may have had with certain expert witnesses expected to appear at the arbitration, and Mr. Gardner complied with this request. Plaintiff made no further requests or objections. Plaintiff's motion to depose or vacate stated that it did not learn of Gardner's dealings with defendant until after the award was entered.

Although plaintiff did not specifically request Gardner to disclose any prior dealings with defendant, Gardner signed a Notice of Appointment which stated:

It is most important that the parties have complete confidence in the Arbitrator's impartiality. Therefore, please disclose any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or other kind. Any doubt should be resolved in favor of disclosure.

In addition, the AAA Code of Ethics for Arbitrators in Commercial Disputes requires complete disclosure of any relationships with the parties. Thus, Gardner was under an affirmative duty to disclose any prior dealings with defendant.

In support of its motion to depose or vacate, plaintiff submitted exhibits showing that Gardner's firm did structural designs for a high school in defendant Person County in 1965 and for a library owned by defendant in 1968, and that Gardner worked as a consultant for an architect retained by defendant in 1979 and 1980 to inspect the County Courthouse and another building owned by defendant. Unquestionably, Gardner should have disclosed these transactions before serving as a neutral arbitrator. We must determine, therefore, whether his failure to disclose entitled plaintiff to depose the arbitrators or required the trial court to vacate the award.

An arbitration award may be vacated where there is "evident partiality by an arbitrator appointed as a neutral." G.S. 1-567.13(a)(2). No North Carolina case directly addresses the issue of an arbitrator's duty to disclose prior dealings with a party. Our Supreme Court has held that depositions of arbitrators may be taken and admitted in a proceeding to vacate an award where "an objective basis exists for a reasonable belief that misconduct has occurred." *Fashion Exhibitors v. Gunter*, 291 N.C. 208, 219, 230 S.E. 2d 380, 388 (1976). In *Gunter*, however, the Court was considering the conduct of the arbitrators with regard to the arbitration process itself rather than previous dealings with a party. In *Turner v. Nicholson Properties, Inc.*, 80 N.C. App. 208, 341 S.E. 2d 42, *disc. rev. denied*, 317 N.C. 714, 347 S.E. 2d 457 (1986), this Court held that a party had no right to depose an arbitrator on the grounds that the arbitrator had appeared as an expert wit-

ness for clients of the opposing counsel's former law firm. In *Turner*, however, the prior association had been disclosed and the AAA had ruled that it did not disqualify the arbitrator. *Turner*, 80 N.C. App. at 211, 341 S.E. 2d at 44.

In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed. 2d 301 (1968), the United States Supreme Court held that the failure of a neutral arbitrator to disclose prior business dealings with a party required vacation of an award. *Commonwealth Coatings* was decided under the Federal Arbitration Act, which, like G.S. 1-567.13(a)(2), authorizes vacation of an award in the event of "evident partiality" on the part of the arbitrators. *Commonwealth Coatings Corp.*, 393 U.S. at 147, 89 S.Ct. at 338, 21 L.Ed. 2d at 303-04 (citing 9 U.S.C. § 10). The neutral arbitrator in *Commonwealth Coatings* had worked periodically for one of the parties as an engineering consultant over a period of four or five years, had received fees of approximately $12,000, and had rendered services on the projects involved in the lawsuit. *Id.* at 146, 89 S.Ct. at 338, 21 L.Ed. 2d at 303. In a plurality opinion, Justice Black held that an award must be vacated if the arbitrator fails to disclose "any dealings that might create an impression of possible bias." *Id.* at 149, 89 S.Ct. at 339, 21 L.Ed. 2d at 305. However, Justice White, in a concurring opinion joined by Justice Marshall, refused to adopt a rule that would require disqualification where the undisclosed relationship is "trivial," though he found the relationship in the case at bar to be "substantial." *Id.* at 150-52, 89 S.Ct. at 340-41, 21 L.Ed. 2d at 305-06.

Subsequent federal decisions have not adopted the strict standard enunciated by Justice Black. *See, e.g., Morelite Constr. Corp. v. New York City Dist. Council Carpenters*, 748 F. 2d 79, 82-83 (2d Cir. 1984). Other jurisdictions that have considered the issue favor disclosure, but the majority view appears to be that an award will not be disturbed where the undisclosed relationship is not substantial. *See* Annotation, *Setting Aside Arbitration Award on Ground of Interest or Bias of Arbitrators*, 56 A.L.R. 3d 697 (1974 & Supp. 1988).

Under the facts of this case, we find the undisclosed transactions to be insufficient to require either vacation of the award or deposition of the arbitrators. The two structural design projects which Gardner's firm completed were done in 1965 and 1968 and

Ruffin Woody and Associates v. Person County

are remote enough in time to dissipate any partiality on Gardner's part. The consulting work performed by Gardner in 1979 and 1980 does not appear to be substantial, and the record shows that the fee for these services was $797.29. Further, the exhibits to plaintiff's motion permit the inference that plaintiff had at least constructive knowledge of Gardner's prior contacts with defendant.

An arbitration award is presumed valid and the party attacking it has the burden of proving adequate grounds to vacate the award. *Thomas v. Howard*, 51 N.C. App. 350, 353, 276 S.E. 2d 743, 745 (1981). Plaintiff here has not alleged that Gardner was in fact impartial, but relies solely on Gardner's failure to disclose the past transactions. Because arbitrators are experts in their fields, it is unrealistic to expect that they have absolutely no prior contacts with the parties. *See Morelite Constr. Corp. v. New York City Dist. Council Carpenters*, 748 F. 2d at 83. Although disclosure of such contacts is preferred, to permit a party to attack an award or depose the arbitrators whenever any prior transaction is not disclosed would frustrate the parties' intent to avoid litigation and obtain a swift resolution of their dispute. *See Turner v. Nicholson Properties, Inc.*, 80 N.C. App. at 211, 341 S.E. 2d at 44-45. Therefore, the trial court did not err in denying plaintiff's motion to depose the arbitrators or alternatively to vacate the award.

For the foregoing reasons, the trial court's order of 10 June 1986 denying plaintiff's motion for a preliminary injunction and the order of 11 November 1987 confirming the arbitration award and entering judgment thereon are affirmed in all respects.

Affirmed.

Judges PHILLIPS and EAGLES concur.